IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA22-681

Filed 06 June 2023

Guilford County, No. 18CRS71878

STATE OF NORTH CAROLINA

v.

CLARENCE RAY GIDDERON

Appeal by defendant from judgment entered 3 December 2021 by Judge William A. Wood in Guilford County Superior Court. Heard in the Court of Appeals 9 May 2023.

*Attorney General Joshua H. Stein, by Special Deputy Attorney General Francisco J. Benzoni for the State.*

*Jarvis John Edgerton, IV, for the defendant-appellant.*

TYSON, Judge.

Clarence Ray Gidderon ("Defendant") appeals from judgment entered on a jury's verdict for first-degree murder sentencing him to life imprisonment without possibility of parole. Our review reveals no error.

## I. Background

Defendant was involved in a relationship with forty-seven-year-old Paige Rickard ("Rickard"). Rickard lived with her aunt, Robin Clodfelter. According to Clodfelter, Defendant was "extremely jealous and controlling over [Rickard]."

Defendant ate dinner with Rickard and Clodfelter on 29 March 2018 at a local church. Clodfelter's refrigerator was broken. She planned to visit a neighbor's house on the way home to obtain a couple cups of ice for the evening. Clodfelter walked behind Rickard and Defendant, and she heard Rickard ask Defendant to leave. Other neighbors also heard Defendant and Rickard arguing loudly as they walked by.

Defendant continued to walk beside Rickard, getting closer and closer to her. Clodfelter heard Defendant say: "Don't play me." Shortly thereafter, Defendant drew a knife and stabbed Rickard in the stomach. Clodfelter contemplated attacking Defendant, but determined she could not overcome him. She heard a cup fall out of Rickard's hand. Clodfelter ran to the closest neighbor's house and called 911. Law enforcement officers arrived shortly thereafter, Rickard was rushed to the hospital, and officers collected evidence from the crime scene. Defendant was taken into custody.

Rickard sustained five sharp force internal injuries on the left side of her body, which inflicted major damage to her spleen. She also suffered from an incised wound on her forehead. Rickard died several days later from complications arising from those wounds.

A jury indicted Defendant for first-degree murder on 11 June 2018. Defendant pled not guilty, and a trial was held. After jury selection, but before the jury was impaneled, Juror Six approached the court deputies. The juror stated she was concerned because other jurors had been asked questions during *voir dire* that she

had not been asked.

Sheriff's Deputy Clapp immediately brought Juror Number 6's concerns to the court's attention:

> THE COURT: All right. Deputy Butler-Moore and Deputy Clapp have brought to my attention – I believe it comes through Deputy Clapp more than Deputy Butler-Moore. But Juror Number 6, who's Ms. Mackenzie on my list, Cory [sic] Mackenzie, C-O-R-A (verbatim) Mackenzie, has indicated to Deputy Clapp that there was a question that some of the other jurors w[ere] asked that she was not asked, but gave no indication that the information she has would have affected her ability to be fair in this case. Is that correct, Deputy Clapp?
>
> THE BAILIFF: Yes, Your Honor.
>
> THE COURT: Did she indicate to you in any way that the information she had would affect her ability to be fair?
>
> THE BAILIFF: No, Your Honor.
>
> THE COURT: But she did indicate that questions were asked of some jurors that were not asked of her; is that correct?
>
> THE BAILIFF: Yes, sir.
>
> THE COURT: Did she make any other comments?
>
> THE BAILIFF: No, Your Honor.

The trial court called Juror Number 6 into open court and asked her additional questions.

> THE COURT: I just wanted to ask you a few questions. Deputy Clapp and Deputy Butler-Moore both indicated that you attempted to give them some information; is that

- 3 -

correct?

JUROR C. MACKENZIE (6): Yes. I realized that the line of questioning from the defense moved on because someone else had maybe a greater concern, but I didn't share some information that I think was related to some of your earlier questions.

THE COURT: Well, let me ask you some questions about that.

JUROR C. MACKENZIE (6): Okay.

THE COURT: Do you feel you could be a fair juror in this case?

JUROR C. MACKENZIE (6): I do.

THE COURT: Okay. And your concern is that some questions were asked of some jurors that perhaps were not asked of other jurors?

JUROR C. MACKENZIE (6): Yes.

THE COURT: But there was a – kind of a catch-all question asked by one or both of the attorneys, is there anything else that would affect your ability to be fair or words to that effect, and you did not speak up; is that correct?

JUROR C. MACKENZIE (6): I don't remember that sort of open-ended question from the defense. I do remember the DA asking if there was anything in his line of questioning.

THE COURT: And whatever this information is that you were not provided perhaps because the specific question was not asked, in your opinion, does not affect your ability to be fair; is that correct?

JUROR C. MACKENZIE (6): I don't think so.

THE COURT: All right. Thank you, ma'am.

JUROR C. MACKENZIE (6): Okay.

(Juror C. Mackenzie departed the courtroom at 2:06 p.m.)

THE COURT: Anything on that issue with Juror Number 6, [District Attorney]?

[DISTRICT ATTORNEY]: No, Your Honor.

THE COURT: [Defense Counsel]?

[DEFENSE COUNSEL]: No, Your Honor.

THE COURT: All right. Well, we can bring all the jurors in, Deputy Clapp, or if someone could let Deputy Butler-Moore know.

Based upon the above colloquy, the trial court denied Defendant's request to re-open the *voir dire* for Juror Number 6, allowed Juror Number 6 to continue to serve on the jury, and impaneled the jury for trial.

The jury's verdict unanimously found Defendant to be guilty of first-degree murder on 3 December 2021. Defendant was sentenced as a prior record level VI offender to life imprisonment without possibility of parole. Defendant appeals.

## II.    Jurisdiction

This Court possesses jurisdiction pursuant to N.C. Gen. Stat. §§ 7A-27(b)(1) and 15A-1444(a) (2021).

## III.    Failure to Reopen Jury *Voir Dire*

Defendant argues the trial court abused its discretion by declining to reopen the *voir dire* of Juror Number 6 and failing to conduct an adequate inquiry or

investigation.

## A. Standard of Review

"The nature and extent of the inquiry made of prospective jurors on *voir dire* ordinarily rests within the sound discretion of the trial court." *State v. Bond*, 345 N.C. 1, 17, 478 S.E.2d 163, 171 (1996) (citation omitted).

"In order for a defendant to show reversible error in the trial court's regulation of jury selection, a defendant must show that the court abused its discretion and that he was prejudiced thereby." *State v. Lee*, 335 N.C. 244, 268, 439 S.E.2d 547, 559 (citations omitted), *cert. denied*, 513 U.S. 891, 130 L. Ed. 2d 162 (1994). "An abuse of discretion is shown only where the court's ruling was manifestly unsupported by reason and could not have been the result of a reasoned decision." *Id.* at 267, 439 S.E.2d 558 (citations and internal quotation marks omitted).

## B. Analysis

### 1. N.C. Gen. Stat. § 15A-1214

Our criminal procedure statutes provide:

> (g) If at any time after a juror has been accepted by a party, and *before the jury is impaneled*, it is discovered that the juror has made an incorrect statement during *voir dire* or that *some other good reason exists*:
> > (1) *The judge may examine*, or permit counsel to examine, *the juror to determine whether there is a basis for challenge for cause.*

N.C. Gen. Stat. § 15A-1214(g)(1) (2021) (emphasis supplied).

"[T]he decision whether to reopen examination of a juror previously accepted

by the parties is a matter within the sound discretion of the trial court." *State v. Freeman*, 314 N.C. 432, 437, 333 S.E.2d 743, 747 (1985) (citing N.C. Gen. Stat. § 15A-1214(g)(1)) (explaining that, while the decision to reopen jury *voir dire* rests within the discretion of the trial court, once *voir dire* has been reopened, either party is allowed to exercise any remaining preemptory challenges for cause); *State v. Locklear*, 349 N.C. 118, 142, 505 S.E.2d 277, 291 (1998) (explaining "the extent and manner of the inquiry [by counsel] rests within the trial court's discretion").

### 2. *State v. Boggess*

Our Supreme Court explained a trial judge's role after a juror has been accepted, but before the jury has been impaneled, in *State v. Boggess*:

> [A] trial judge has leeway to make an initial inquiry when allegations are received before a jury has been impaneled that would, if true, establish grounds for reopening *voir dire* under N.C.G.S. § 15A–1214(g). As part of this initial investigation, the judge may question any involved juror and may consult with counsel out of the juror's presence. Based on information thus developed, the judge has discretion to reopen *voir dire* or take other steps suggested by the circumstances. Because the jury has not been impaneled and other potential jurors are still available, minimal disruption occurs if the judge resolves any doubts in favor of reopening *voir dire* and accords counsel the right to exercise any remaining peremptory challenges. If the judge at any point allows the attorneys to question the juror directly, *voir dire* has necessarily been reopened and the procedures set out in N.C.G.S. § 15A–1214(g)(1)–(3) are triggered. "[O]nce the examination of a juror has been reopened, 'the parties have an absolute right to exercise any remaining peremptory challenges to excuse such a juror.'"

358 N.C. 676, 683, 600 S.E.2d 453, 457 (2004) (citation omitted).

### 3. *State v. Adams*

This Court also examined whether the trial court abused its discretion by failing to reopen *voir dire* in *State v. Adams*. 285 N.C. App. 379, 877 S.E.2d 721 (2022). In *Adams*, one of the jurors expressed his belief "Defendants should 'answer the questions themselves'" after he was selected to serve on the jury but before the jury was impaneled. *Id.* at 391, 877 S.E.2d at 730. The trial judge first called the juror to clarify his opinion, instructed the juror about a defendant's right to refrain from testifying, and gave the juror time to re-evaluate his opinion. *Id.*

The trial court ultimately denied defendant's motion to re-open jury *voir dire* "after inquiring into Juror Clark's opinion and only after determining Juror Clark would be able to follow the law." *Id.* at 393, 877 S.E.2d at 731. The trial court further explained "that reopening *voir dire* would 'open[ ] a Pandora's box' and cause delays during Defendants' trial, Defense counsel for both parties had already passed on Juror Clark, and Juror Clark gave repeated affirmations that he understood and could apply the law." *Id.* This Court affirmed the trial court's decision and concluded the trial court reached a reasoned decision and did not abuse its discretion. *Id.*

The facts before us are similar to those in *Adams*. Like in *Adams*, the trial judge called Juror Number 6 before the court and questioned her regarding the statements she had made to the deputies. *Adams*, 285 N.C. App. at 391, 877 S.E.2d at 730. The trial judge confirmed, regardless of whether defense counsel asked Juror

Number 6 the same questions as other jurors, that those unasked questions would not affect Juror Number 6's ability to serve as a fair and impartial juror. Juror Number 6 never expressed doubts about her impartiality, ability to serve as a juror, find the facts, and to fairly apply the law. To the contrary, the trial court's questioning further confirmed and solidified Juror Number 6's commitment to serve as a fair and impartial juror.

The decision whether to re-open *voir dire* rested within the trial court's discretion. Juror Number 6 had been selected by both parties without challenge and the jury was not yet impaneled. N.C. Gen. Stat. § 15A-1214(g)(1) (2021); *Boggess*, 358 N.C. at 683, 600 S.E.2d at 457 (citing *Id.* § 15A-1214(g)(1)); *Bond*, 345 N.C. at 17, 478 S.E.2d at 171; *Lee*, 335 N.C. at 268, 439 S.E.2d at 559; *Freeman*, 314 N.C. at 437, 333 S.E.2d at 747; *Locklear*, 349 N.C. at 142, 505 S.E.2d at 291. Defendant has failed to carry his burden on appeal to show any abuse in the trial court's exercise of its discretion. *Lee*, 335 N.C. at 267-68, 439 S.E.2d at 558-59; *Adams*, 285 N.C. App. at 393, 877 S.E.2d at 731.

The trial court provided counsel on both sides with the opportunity to request further *voir dire*, and both parties' counsel expressly declined the opportunity. *Id.* Defense counsel also failed to request additional *voir dire* when asked by the trial court and waived the right to challenge the issue on appeal. N.C. R. App. P. 10(a)(1). Defendant's argument is overruled.

### IV.  Conclusion

The decision whether to re-open *voir dire* rests within the trial court's sound discretion. N.C. Gen. Stat. § 15A-1214(g)(1); *Boggess*, 358 N.C. at 683, 600 S.E.2d at 457 (citing *Id.* § 15A-1214(g)(1)); *Bond*, 345 N.C. at 17, 478 S.E.2d at 171; *Lee*, 335 N.C. at 268, 439 S.E.2d at 559; *Freeman*, 314 N.C. at 437, 333 S.E.2d at 747; *Locklear*, 349 N.C. at 142, 505 S.E.2d at 291.

The trial court conducted a timely inquiry under the statute into Juror Number 6's comments, concerns, questions, and beliefs prior to impaneling the jury. *Adams*, 285 N.C. App. at 393, 877 S.E.2d at 731. Defendant has failed to show any abuse in the trial court's exercise of discretion in questioning Juror Number 6. *Id.*; *Lee*, 335 N.C. at 267-68, 439 S.E.2d at 558-59.

Defendant also failed to request re-opening of *voir dire* and expressly waived re-opening when asked by the trial court. N.C. R. App. P. 10(a)(1).

Defendant received a fair trial, free from prejudicial errors he preserved and argued on appeal. We find no error in the jury's verdicts or in the judgment entered thereon. *It is so ordered.*

NO ERROR.

Judge ARROWOOD and Judge RIGGS concur.